# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| **STRATEGIC CAPITAL BANCORP, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**ST. PAUL MERCURY INSURANCE CO.,**<br><br>Defendant. | Case No. 10-2062 |

### REPORT AND RECOMMENDATION

This insurance dispute is back before the Court on remand from the Seventh Circuit Court of Appeals. Strategic Capital Bancorp., Inc. (SCBI), the only remaining plaintiff, has filed a Second Amended Complaint (#87) against Defendant St. Paul Mercury Insurance Company (St. Paul), seeking a declaration that St. Paul has a duty to defend and indemnify SCBI for certain claims in an underlying state court action, pursuant to a director and officer liability insurance policy (D&O policy) that SCBI purchased from St. Paul. SCBI also brings claims for breach of contract and bad faith refusal to provide coverage.

In September 2013, St. Paul filed a Motion to Dismiss Second Amended Complaint (#90), seeking to strike an introductory section of SCBI's complaint and dismiss SCBI's breach of contract and bad faith claims. SCBI opposes (#92). After careful review of the parties' arguments, the Court recommends that St. Paul's Motion to Dismiss Second Amended Complaint **(#90)** be **GRANTED** to the extent it seeks to strike paragraphs 1-39 of the Second Amended Complaint and **DENIED** in all other respects.

### I. Background[1]

The Court quotes the Seventh Circuit's opinion to explain the underlying state action that gave rise to this case:

---
[1] In the interest of brevity, the Court does not detail the involvement of prior parties in this case.

>The dispute here concerns a lawsuit that we call the "*Miller* action" brought by five plaintiffs—Dwight Miller, Wells Anderson, Gene King, Teresa King, and Glenda L. Lane, as trustee of the Glenda L. Lane Trust. Those plaintiffs sued SCBI and two of the company's directors and officers, John Gorman and Gary Svec. In the state court complaint, each of the five plaintiffs asserted three claims against each defendant: fraud, civil conspiracy, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.[2]

*Miller v. St. Paul Mercury Ins. Co.*, 683 F.3d 871, 873 (7th Cir. 2012).

SCBI contacted St. Paul about the *Miller* action and requested coverage under the D&O policy that SCBI had purchased from St. Paul. On November 4, 2009, St. Paul wrote SCBI that the D&O policy did not cover the *Miller* action, pursuant to the insured v. insured policy exclusion, a common provision in D&O policies that "exclude[s] from coverage losses for claims brought by one 'insured' against another 'insured,' often defined to include current and former corporate directors and officers as well as the corporation itself." *Id.* at 872.[3] SCBI asked St. Paul to reconsider its position. On January 20, 2010, St. Paul wrote SCBI that, although its position continued to be that the insured v. insured exclusion barred coverage of the *Miller* action, it would advance forty percent of the defense costs in the *Miller* action, subject to a reservation of rights. On January 25, 2010, SCBI rejected that offer and proposed instead that St. Paul advance all defense costs except for claims that fell within the policy exclusion.

It appears that the parties dispute the course of the following events, but the Court accepts as true all well-pleaded allegations in SCBI's complaint, as required when considering a motion to dismiss. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). When St. Paul did not respond to the January 25, 2010, letter, SCBI filed this lawsuit on February 2, 2010. That day, St. Paul's counsel emailed SCBI a letter that offered, under a full reservation of rights, to advance all defense costs except for claims that fell within the policy exclusion. The letter also indicated that St. Paul would send SCBI an interim funding agreement. SCBI's counsel called St. Paul's counsel later that day, accepted the offer, and explained that SCBI would voluntarily

---

[2] The *Miller* plaintiffs have since filed an amended complaint against only SCBI. (#87, ¶ 60.)
[3] As explained by the Seventh Circuit, "Without such an exclusion, a D & O policy could require the insurer to pay for the business mistakes of insured directors and officers if the corporation (also an insured) or if former officers or directors brought suit, collusive or otherwise, against them." *Miller v. St. Paul Mercury Ins. Co.*, 683 F.3d 871, 872 (7th Cir. 2012).

2

dismiss this lawsuit once it received the funding agreement and payment from St. Paul. SCBI's counsel sent an email the following day confirming the telephone conversation. On February 11, 2010, St. Paul's counsel sent a letter revoking the coverage offer, explaining that St. Paul viewed SCBI's filing of this lawsuit as a rejection of its coverage offer. SCBI's counsel wrote St. Paul's counsel, recounted their phone conversation on February 2, 2010, and maintained that SCBI had accepted St. Paul's coverage offer. St. Paul's position continues to be that SCBI's filing of the lawsuit constituted a rejection of the coverage offer.

Therefore, this case continued. SCBI sought a declaration from this Court that St. Paul had a duty to provide coverage for the *Miller* action and brought breach of contract and bad faith claims against St. Paul. St. Paul moved to dismiss the complaint, on the basis that St. Paul had no duty to defend or indemnify SCBI in the *Miller* action due to the insured v. insured exclusion. This Court agreed with St. Paul. The Court found that, of the plaintiffs in the underlying suit, Miller, Anderson, and Lane, as former directors of SCBI, were insureds under the D&O policy, and that the Kings were not. The Court reasoned that the presence of any insured plaintiff in a suit against an insured defendant invoked the insured v. insured exclusion and barred coverage for the entire suit. Accordingly, the Court dismissed the case with prejudice.

The Seventh Circuit reversed in part, explaining that although the insured v. insured exclusion barred coverage of the claims brought by the insured plaintiffs, St. Paul, nevertheless, has a duty to defend and indemnify SCBI against claims brought by the non-insured plaintiffs, the Kings. The Seventh Circuit remanded for further proceedings consistent with its opinion.

After the parties were unable to reach a settlement, SCBI filed a three-count Second Amended Complaint (#87) against St. Paul: Count I seeks a declaratory judgment that St. Paul has a duty provide coverage for the Kings' claims in the *Miller* action; Count II is a breach of contract claim; and Count III is a bad faith refusal to provide coverage claim. St. Paul moves to strike an introductory section of SCBI's complaint and dismiss SCBI's breach of contract and bad faith claims.

## II.  Motion to Strike

St. Paul first moves to strike the "Introduction" and "Overview" sections of SCBI's complaint (¶¶ 1-39) as argumentative, confusing, and duplicative of the complaint's "Factual Statement" (¶¶ 47-75).  In response, SCBI argues that its complaint sets forth a short, plain statement of the claim for relief, as required by Federal Rule of Civil Procedure 8.  SCBI does not respond to St. Paul's argument that the Introduction and Overview sections duplicate the Factual Statement.

Federal Rule of Civil Procedure 12(f) provides that the Court, on a party's motion, "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  Motions to strike are ordinarily disfavored because they often function only to delay resolution of a case, but "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay."  *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

The Court agrees with St. Paul that, to the extent the Introduction and Overview sections set forth factual allegations, they duplicate the Factual Statement.  The balance of these sections is argument, which is unnecessary in a complaint.  *See* FED. R. CIV. P. 8.  Therefore, the Court recommends that paragraphs 1-39 of the Second Amended Complaint be stricken.

## III.  Motion to Dismiss

St. Paul next moves to dismiss Count II, breach of contract, and Count III, bad faith refusal to provide coverage.  St. Paul first contends that SCBI's efforts to pursue these claims on remand exceed the scope of the Seventh Circuit's remand order.  Alternatively, St. Paul argues that SCBI fails to state a claim for breach of contract and bad faith.

### A.  Scope of Remand

The Court first addresses the scope of the Seventh Circuit's order remanding the case. St. Paul argues that the only issues the Court may consider on remand are "the reasonableness and necessity of the defense fees incurred in defense of the Kings' claims, the proper allocation of those fees under the Policy, and the application of any policy exclusions (other than the insured

versus insured exclusion) that bar coverage for the Kings' claims." (#91, p. 2.)  St. Paul concludes, therefore, that SCBI's breach of contract and bad faith refusal to provide coverage claims are beyond the scope of this Court's authority on remand.

No strict formula exists for determining a district court's authority on remand; instead, "[t]he scope of a district court's power on remand is determined by the language of the order of remand." *United States v. White*, 406 F.3d 827, 831 (7th Cir. 2005).  Turning to the language of the remand order, the Seventh Circuit concluded,

> We AFFIRM the district court's decision in part, to the extent it held that St. Paul is not required to defend against or indemnify the claims by the insured plaintiffs, Miller and Anderson, or by the Lane Trust, which acts on behalf of an insured. We REVERSE the district court's decision in part and hold that St. Paul must defend against and indemnify the claims by the non-insured plaintiffs, the Kings. The case is REMANDED to the district court for further proceedings consistent with this opinion.

*Miller*, 683 F.3d at 880.

Nothing in this remand order prevents the Court from hearing SCBI's breach of contract and bad faith claims.  These claims are not new to the case; SCBI set forth its breach of contract and bad faith claims in its June 17, 2010, amended complaint (#19).  When this Court determined that St. Paul had no duty to defend or indemnify SCBI in the *Miller* action, that conclusion necessarily resolved SCBI's breach of contract and bad faith claims in St. Paul's favor, as well.  The Seventh Circuit reversed that conclusion in part, however.  Therefore, the Court finds that SCBI's renewed efforts to pursue its breach of contract and bad faith claims fall squarely within the scope of the Seventh Circuit's remand order.

### B. Failure to State a Claim

**1. Legal Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) serves to test the sufficiency of the complaint, not to decide the merits of the case.  *See AnchorBank*, 649 F.3d at 614.  To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To meet this standard, the allegations in the complaint must, one, be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests,'" and, two, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 554, 555) (alteration omitted).

In considering a motion to dismiss for failure to state a claim, the Court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *AnchorBank*, 649 F.3d at 614. The Court is generally limited to the allegations in the complaint, but it is well-settled that the Court "may consider documents attached to or referenced in the pleading if they are central to the claim," *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012), such as the D&O policy attached here. *See* Exhibit G (#87-7).

**2. Breach of Contract Claim**

St. Paul argues that SCBI fails to state a breach of contract claim. St. Paul first contends the claim fails in its entirety because SCBI incorrectly alleges that St. Paul had a duty to advance defense costs to SCBI (#87, ¶ 87). St. Paul notes that, if SCBI had chosen the "Duty of the Insureds to Defend" option when it purchased the D&O policy, SCBI would have had a duty to select defense counsel and defend itself, and St. Paul would have had a duty to advance defense costs to SCBI. *See* D&O Policy, Ex. G (#87-7, p. 46). However, because SCBI selected "Duty of Insurer to Defend" in its D&O policy, St. Paul had no duty to advance defense costs and, instead, had the "right and duty to select defense counsel and defend any Claim covered by . . . this Policy." (#87-7, p. 47.)

It is unclear why SCBI alleges that St. Paul had a duty to advance defense costs to SCBI, but, as St. Paul recognizes (#91, p. 11), SCBI's breach of contract claim rests only in part on St. Paul's alleged failure to advance defense costs. St. Paul fails to explain why this error means that the breach of contract claim fails in its entirety, particularly when St. Paul accepts that it bore the duty to defend SCBI for covered claims. Indeed, elsewhere in the complaint, SCBI alleges that St. Paul had a contractual duty to defend and indemnify SCBI under the policy (#87,

¶ 85), and that St. Paul breached its duty by failing to provide coverage to St. Paul for the *Miller* action (#87, ¶ 92). This is sufficient to state a claim for breach of contract.

St. Paul next argues that SCBI cannot recover liquidator fees as damages for breach of contract. St. Paul contends that liquidator's fees do not fall within "Defense Costs," defined by the D&O policy to be "that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees, experts' fees, and mediators' or arbitrators' fees) and expenses . . . incurred in defending or investigating a Claim." (#87-7, p. 37.) St. Paul asserts, but does not explain why, SCBI's liquidator's fees do not fall within this definition. SCBI responds persuasively in opposition that the types of fees enumerated in the policy—"attorneys' fees, experts' fees, and mediators' or arbitrators' fees"—do not constitute an exhaustive list of covered fees. Absent a more developed argument from St. Paul, the Court finds that it would be premature at this stage of the case to determine that SCBI cannot recover liquidator's fees.

For these reasons, the Court recommends that St Paul's motion to dismiss be denied as to SCBI's breach of contract claim.

**3. Bad Faith Refusal to Provide Coverage**

St. Paul next contends that SCBI's bad faith claim fails as a matter of law because an insurer's decision to litigate a bona fide coverage dispute does not constitute bad faith.[4] St. Paul maintains that its refusal to provide coverage to SCBI was based on a bona fide dispute as to whether the insured v. insured exclusion barred coverage of the entire *Miller* action. St. Paul points to this Court's initial agreement with St. Paul's interpretation of the policy as evidence that the dispute was, indeed, bona fide. SCBI responds that, as a general principle, bad faith claims present questions of fact that render them inappropriate for resolution on a motion to dismiss. SCBI maintains that it has set forth allegations sufficient to plead bad faith: specifically, that St. Paul unreasonably and vexatiously revoked its coverage offer after SCBI accepted it, and took the position that the insured v. insured exclusion barred coverage entirely, when this position was inconsistent with the D&O policy and controlling law.

---

[4] St. Paul advances the additional argument that SCBI's bad faith allegations in Count III are conclusory, but they must be read in conjunction with the factual section of the complaint. *See* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice.").

Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, provides "an extracontractual remedy to policyholders whose insurer's refusal to . . . pay a claim under a policy is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996). Stated differently, Section 155 is the "legislature's remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits." *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003) (internal quotation marks omitted). The statute permits a policyholder to recover reasonable attorney fees, costs, and a statutory penalty. 215 ILCS 5/155. "Whether an insurer acted unreasonably or vexatiously presents an issue of fact, requiring courts to consider the totality of circumstances." *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007) (applying Illinois law) (citations omitted). As St. Paul correctly notes, "[i]f there is a bona fide dispute regarding coverage—meaning a dispute that is real, genuine, and not feigned—statutory sanctions are inappropriate." *Id.* at 1086-87 (citations, internal quotation marks, and alterations omitted).

St. Paul may ultimately have the winning argument that a Section 155 award is unwarranted here because St. Paul's initial position was based on a bona fide dispute as to coverage. However, the Court agrees with SCBI that it is too early to rule definitively in St. Paul's favor on this issue. The Court does not have the benefit of all the evidence in order to consider the totality of the circumstances, as required by the law regarding Section 155. Particularly, the parties' factual dispute as to whether St. Paul reneged on a coverage offer that SCBI accepted or, as St. Paul tells it, fairly construed SCBI's filing of this lawsuit as a rejection of its coverage offer, makes the question of bad faith one that cannot be resolved on a motion to dismiss.

Finally, the Court notes that SCBI alleges that St. Paul's bad faith refusal to provide coverage violated both Section 155 and Illinois common law. Illinois law does not allow a policyholder to bring an independent tort claim for "bad faith or unreasonable and vexatious conduct" by an insurer.[5] *Cramer*, 675 N.E.2d at 904; *see also Voyles v. Sandia Mortg. Corp.*,

---

[5] The *Cramer* court explained:
> [A]n insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action. Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort. Courts therefore should look beyond the

8

751 N.E.2d 1126, 1131 (Ill. 2001); *Burress-Taylor v. Am. Sec. Ins. Co.*, 980 N.E.2d 679, 688 (Ill. App. Ct. 2012); *Busse v. Paul Revere Life Ins. Co.*, 793 N.E.2d 779, 786 (Ill. App. Ct. 2003). Because SCBI does not allege an independent tort that is recognized by Illinois law, Section 155 and the remedies enumerated therein provide the exclusive means of recovery on SCBI's bad faith claim.

### IV.  Conclusion

For the foregoing reasons, the Court recommends that St. Paul's Motion to Dismiss Second Amended Complaint **(#90)** be **GRANTED** to the extent it seeks to strike paragraphs 1-39 of the Second Amended Complaint and **DENIED** in all other respects.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen (14) days after being served with a copy of the Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21 Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 24th day of January, 2014.

                                                s/DAVID G. BERNTHAL
                                    UNITED STATES MAGISTRATE JUDGE

---

legal theory asserted to the conduct forming the basis for the claim.  In cases where a plaintiff actually alleges and proves the elements of a separate tort, a plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct.

*Cramer*, 675 N.E.2d at 904 (citations omitted).  A narrow exception exists for an insurer's bad faith refusal to settle a claim with a third-party.  *Id.* at 903.