UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

STRATEGIC CAPITAL BANCORP, INC.,

    Plaintiff,

v.

ST. PAUL MERCURY INSURANCE COMPANY,

    Defendant.

Case No. 10-2062

## REPORT & RECOMMENDATION

In litigation, like life, there are consequences for choices. Here, Plaintiff Strategic Capital Bancorp, Inc. ("Strategic") refused to produce critical documents that it controlled and then disregarded multiple court orders directing it to produce those documents and other information. Most recently, Strategic failed to make any significant effort to comply with this Court's order of June 26, 2015, which could have cured the harm, at least in part, caused by Strategic's discovery violations. Accordingly, and for the reasons stated below, the Court recommends that Strategic Capital Bancorp, Inc. be ordered to pay some of the reasonable expenses, including attorney fees and costs, of Defendant St. Paul Mercury Insurance Co. ("St. Paul") associated with the motions to compel production of the BuckleySandler records and the reasonable expenses, including attorney fees and costs, related to reviewing and indexing the BuckleySandler records produced on or about June 2, June 3, June 7, June 9, and June 12 (approximately 79,454 pages). The Court further recommends that Strategic be barred from presenting at trial any evidence relating to fees incurred by BuckleySandler during the *Miller* litigation.

### I. Background

Strategic filed its Complaint against St. Paul in 2010, alleging bad faith and breach of contract and sought a declaration that St. Paul has a duty under a policy of insurance to

reimburse Strategic for nearly $1 million in fees incurred in defending a lawsuit filed against Strategic in state court ("*Miller* litigation"). Under the insurance policy, St. Paul was obligated to pay for loss and defense costs for which Strategic became legally obligated to pay during the policy period.

Five plaintiffs, Dwight Miller, Wells Anderson, Gene King, Teresa King, and Glenda L. Lane as trustee of the Glenda L. Lane Trust, brought the state claim in the *Miller* litigation. Three of the plaintiffs, Dwight Miller, Wells Anderson, and Glenda L. Lane as trustee, were insureds under the policy, while two plaintiffs, Gene King and Teresa King, did not qualify as insureds under the policy. The plaintiffs asserted claims of fraud, civil conspiracy, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act against Strategic and two of its officers. Strategic was primarily represented by the law firm BuckleySandler in the *Miller* litigation.

Strategic notified St. Paul of the *Miller* action and requested coverage under the policy. St. Paul refused to advance defense costs or otherwise indemnify Strategic. Strategic then brought the present action in Federal court. The case was removed to the Central District of Illinois on March 17, 2010. The District Court dismissed Strategic's Complaint in November 2010, finding that the presence of insureds as plaintiffs in the *Miller* litigation meant that St. Paul had no duty to defend or indemnify, including the claims brought by plaintiffs who were not insureds under the policy. The Seventh Circuit Court of Appeals reversed that order in part, finding that St. Paul had a duty to defend against only the claims of the non-insured plaintiffs, Gene and Teresa King. *Miller v. St. Paul Mercury Ins. Co.*, 683 F. 3d 871 (7th Cir. 2012). The Seventh Circuit remanded the case to the district court on August 13, 2012, almost three years ago.

On July 11, 2013, Strategic's filed an Amended Complaint seeking a declaratory judgment concerning its rights and St. Paul's obligations under the insurance policy, damages in the amount of Strategic's attorney fees and costs in the *Miller* litigation, damages in the amount of Strategic's fees and costs in the present litigation, and a statutory penalty of $60,000.

Pursuant to the terms and conditions of the policy, St. Paul asserts that it is responsible only for reasonable and necessary defense costs. On January 14, 2015, St. Paul served its

2

discovery requests on Strategic seeking information and documents related to, among other issues, the work performed and billed by BuckleySandler in the *Miller* litigation. Strategic failed to respond to those discovery requests, thereby denying St. Paul records and information necessary to meet a deadline of March 30, 2015, to complete fact depositions as previously ordered by the Court. Strategic provided only limited Rule 26(a) disclosures, failing to provide documents or even a description of the documents its prior counsel, BuckleySandler, reviewed and/or created in the underlying *Miller* litigation.[1] Throughout the month of February 2015, counsel for St. Paul unsuccessfully attempted to obtain the BuckleySandler records from Strategic.

On March 9, 2015, St. Paul filed a Motion to Compel (#129), asking the Court to order Strategic to comply with the outstanding discovery requests. Strategic chose not to respond to this motion, thereby suggesting to the Court it had no opposition to the motion pursuant to Local Rule 7.1(B)(2). After five weeks, the Court granted St. Paul's Motion to Compel, ordering Strategic to answer St. Paul's Interrogatories and produce the BuckleySandler records "in their control and possession and in the possession of any former counsel within 3 days of entry of this order." (April 16, 2015 Order.) The Court also ordered Strategic to show cause why the case should not be dismissed for want of prosecution (#132).

Strategic allowed five days to pass after the Court's Order before it chose to seek reconsideration. On April 21, 2015, Strategic filed an "Emergency Motion for Reconsideration," but wholly failed to explain its prior decision to ignore St. Paul's Motion to Compel (#134). Instead, Strategic included untimely arguments it should have made weeks before.

Magistrate Judge Bernthal held a hearing on May 15, 2015, to discuss the pending motions, including Strategic's Motion to Reconsider. At the hearing, the Court rejected the Motion to Reconsider and again ordered Strategic to comply with its prior order. The Court expressed its concerns with the delay caused by Strategic and admonished that continued refusal to comply with the order to compel could result in additional sanctions.

---

[1] St. Paul also subpoenaed BuckleySandler directly, but seems to have abandoned this route after counsel for Strategic initially advised that they would obtain the responsive records.

Regardless, Strategic chose to further stonewall St. Paul's discovery requests. On May 20, 2015, Strategic filed an Objection (#139) to Magistrate Judge Bernthal's May 15, 2015, Order. Judge Bruce struck the objection, determining that it was procedurally improper. (May 21, 2015 Order.) Undeterred, Strategic filed its appeal on May 29, 2015 (#140). Judge Bruce denied the appeal on June 25, 2015.

Throughout this time, Strategic took no apparent steps to gather the BuckleySandler records, except as noted below. On June 5, 2015, St. Paul filed another motion to compel these documents and the other information previously ordered by the Court. In its motion, St. Paul chronicled its continuing effort to obtain the BuckleySandler records and other information related to the fees incurred by BuckleySandler during the *Miller* litigation.

As previously noted, this case has been pending since 2010, and was remanded to the district court in 2012. Three years after remand, on or about June 2, June 3, June 7, June 9, and June 12, Strategic produced approximately 79,454 pages of BuckleySandler records. Even though these documents form the context of the primary dispute in this litigation, Strategic produced these 80,000 documents well after the passing of the initial disclosure deadline, despite multiple discovery deadline extensions and with the upcoming close of discovery on August 1, 2015.

On June 26, 2015, this Court held a hearing to gather additional information and consider St. Paul's Motion for Sanctions or to Compel (#141). At the close of the hearing, the Court found that Strategic had failed to engage in meaningful discovery, disregarded the Court's prior orders, and otherwise prevented St. Paul from learning information and obtaining records that were at the center of this dispute. That day, the Court again ordered Strategic to answer St. Paul's interrogatories. The Court also ordered Strategic, in an effort to minimize the prejudice to St. Paul and avoid further delays in this case, to produce an index of the 80,000 pages that it turned over to St. Paul earlier that month. Finally, the Court again ordered Strategic to show cause why Count III of its Complaint should not be dismissed for want of prosecution (#146).

On July 5, 2015, Strategic filed its document index and answers to outstanding interrogatories. Neither complies with the Court's June 26, 2015, Order.

4

Specifically, the Court's June 26, 2015, Order directed Strategic to file with the Court and submit to St. Paul a detailed index of the pages of BuckleySandler records it had produced since June 2, 2015. The Order required that the "index should include *for each document* the beginning bates number, the ending bates number, the date of the document (if any), and a description of the document (including document type, subject matter, author(s), and recipient(s))."[2] This index, as discussed during the hearing, was intended to prevent any further delays caused by Strategic's non-compliance. It also was intended to limit the prejudice to St. Paul by giving St. Paul a meaningful roadmap of the records that should have been produced months (if not years) earlier.

Strategic's submission is woefully inadequate. It fails in every respect to comply with the Court's June 26, 2015, Order. Indeed, it lacks the "date of the document," the "subject matter," and, in any comprehensible manner, the "author" and "recipient" for each document. As noted by St. Paul in its Objection, Strategic's own description of the submission admits that it provided only the "filename and location where each of the documents produced came from within BuckleySandler's system and/or production in order to guide review and location." Despite the explicit discussion during the June 26, 2015, hearing, nothing about Strategic's submission would allow St. Paul to prepare for a deposition of any fact witness or allow an expert witness to make sense of the incredible volume of documents produced at the last minute of this five year litigation. Strategic's submission is, as St. Paul stated, utterly devoid of any real identifying information, fails to set out any individual documents, and fails to specify the subject matter or recipient of any document. It is not an index of any kind and certainly not of the type described by the Court in its June 26, 2015, Order.

Strategic tries to justify its noncompliance with the Court's Order by arguing that it previously produced the same information to St. Paul. Specifically, Strategic points to the metadata that was produced with the electronic records, which included for many documents the same information that was supposed to be included in the index. Strategic's easy access to this information makes its failure to comply with this Court's order even more egregious. Strategic could have simply used that metadata to electronically generate the precise index ordered by the

---

[2] Strangely, Strategic denies that this Order exists, stating in its Response to St. Paul's Objections that "[n]owhere did the Court order those specific requirements for the index." (# 153) This completely inaccurate statement exemplifies the care with which Strategic has approached this litigation.

5

Court. Yet, just as it has repeatedly done, Strategic chose to ignore the Order in another apparent effort to gain advantage over St. Paul.[3]

The Court also ordered Strategic to provide to St. Paul and file with the Court complete answers to Interrogatories Nos. 11 and 12 from St. Paul's First Set of Interrogatories to Strategic (#141-1). For Interrogatory No. 11, Strategic was ordered to "detail each billing task and specifically describe why it was necessary in the *Miller* Litigation and how it relates to the aspect of the litigation involving Gene and Teresa King." For Interrogatory No. 12, for each billing entry that includes more than one task, Strategic was ordered to describe each task individually and identify the amount billed for each task.

Strategic made no meaningful effort to comply with this order either. Instead, Strategic asserted an objection based on a lack of personal knowledge and otherwise submitted only cursory answers to the interrogatories. Indeed, Strategic again ignored one of the central points of this litigation by failing to state how the billing entries related to those aspects of the *Miller* litigation that involved the Kings.

On July 7, 2015, Strategic responded to the Court's order to show cause why Count III of Strategic's Complaint should not be dismissed (#149). Strategic's response satisfies the Court, and the order to show cause is discharged.

## II. Sanctions

The drafters of the Federal Rules of Civil Procedure anticipated litigation wherein one party would refuse to engage in discovery or ignore court orders to comply with discovery requests. Rule 37 authorizes, and in certain circumstances mandates, consequences for Strategic's behavior.

Rule 37 first provides for an award of reasonable expenses. When a party's refusal to participate in discovery causes the other party to move to compel compliance, it provides that "[i]f the motion is granted – or if the disclosure or requested discovery is provided after the

---

[3] In Response, Strategic also states, "The point, however, is that the Court Ordered an index and Strategic complied by providing the best and most useful index it could for the Defendant." (# 153) A review of Strategic's "index" demonstrates that this statement is utterly absurd.

6

motion was filed -- the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). Similarly, the Rule requires sanctions against a party that refuses to comply with a court order relating to discovery. "[T]he court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." FED. R. CIV. P. 37(b)(2)(B).

At the request of the Court, St. Paul submitted a schedule of its expenses, including attorney fees, related to its efforts to obtain from Strategic the BuckleySandler records beginning with the Motion to Compel (# 129) filed March 9, 2015, and concluding with the current costs associated with reviewing and indexing the BuckleySandler records produced in June 2015. The Court has reviewed these expenses and finds that St. Paul should be awarded half its fees and expenses relating to the pleadings and hearings ($31,578.82), along with the full expense of reviewing and cataloging the documents produced at the last hour ($33,167.63). Therefore, the Court recommends that Strategic be ordered to pay St. Paul the amount of $64,746.45 on or before August 31, 2015.

Next, the Court must determine whether additional sanctions are warranted in light of Strategic's escalating refusal to comply with Court orders and brazenly stonewalling the production of BuckleySandler records and information despite multiple Court orders to comply. Among other possible sanctions, Rule 37 allows the Court to enter an order that prohibits "the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). Severe sanctions should only be imposed where a party fails to comply with a discovery order and displays willfulness, bad faith, or fault. *Philips Medical Sys. Int'l. B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992). Sanctions serve a number of purposes, including to penalize the litigant, deter the litigant in the future, and deter others who might also ignore discovery orders. *Id.* "An award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery." *Langley by Langley v. Union Elec. Co.*, 107 F. 3d 510, 515 (7th Cir. 1997) (quoting *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993).

The Court finds this case analogous to the facts of *Langley*, where the defense counsel requested a viewing of a furnace that had leaked lethal carbon monoxide fumes and was central to the plaintiff's case. The plaintiff's counsel promised a viewing and then failed to produce the furnace. The defendant moved for sanctions and the Court ordered the plaintiff to produce the furnace within 21 days. The Court then reentered its order after the plaintiff filed a motion to reconsider, but the plaintiff continued to resist producing the furnace. The Court issued sanctions prohibiting the plaintiff from presenting evidence regarding the furnace at trial. While acknowledging that the sanction was "sweeping," the Seventh Circuit upheld the sanction, finding that "[b]ecause [the plaintiff] was in violation of the order to produce the furnace, the sanctioning was a perfectly legitimate exercise of power under Rule 37(b)." *Id*. at 514.

The Court finds that Strategic, like the plaintiff in *Langley*, has engaged in a willful effort to prevent (or at least significantly delay) St. Paul from learning the information it needed to defend this action. Whether BuckleySandler's fees were reasonable and necessary and related to the *Miller* litigation goes to the heart of St. Paul's defense. This has been clear from everything filed by St. Paul since this case was remanded in 2012. Yet, nearly five years into the litigation and three years after remand, Strategic still had not released the BuckleySandler records that it controlled. On the eve of the discovery deadline, and only after two motions to compel and repeated court orders, Strategic produced (or maybe it is better described as dumped) 80,000 pages of responsive documents.

Even then, the Court gave Strategic an opportunity to cure its misconduct by producing an index that would limit the prejudice to St. Paul and avoid further delays. Strategic instead chose to disregard the Court's Order, producing an apparently computer generated list of the documents rather than a comprehensive index that could have minimized the harm. This repeated behavior, seemingly designed to gain an advantage over St. Paul, indicates to the Court a willful intent.

Strategic's behavior also caused serious prejudice to St. Paul. Admittedly, St. Paul was slow to begin its discovery in earnest. Nevertheless, it began in January to aggressively seek discovery, propounding interrogatories, requesting documents, and scheduling depositions. At that point, St. Paul had nearly eight months to complete discovery (after the agreed extensions).

Strategic, though, stonewalled St. Paul's efforts and then produced 80,000 pages on the eve of deadlines. At the time of this Recommendation, Strategic still has not provided meaningful answers to interrogatories. Strategic's conduct has adversely impacted St. Paul's ability to prepare for depositions, concealed potential litigation strategies that could have only been discovered in the BuckleySandler records, and limited St. Paul's expert review of those records.

St. Paul has asked the Court to dismiss the Second Amended Complaint. Although Strategic's conduct is egregious, less drastic measures will suffice to satisfy the purposes of sanctions.

The Court has considered a number of options in fashioning the appropriate sanction. Limiting the sanctions to costs alone would fail to take into account the severity of the conduct. Withholding 80,000 pages of crucial documents until the discovery cutoff in a five-year (or three-year) litigation is unacceptable. The cost of a motion to compel is a small price to pay for the advantage that accompanies this misconduct.

The Court also considered prohibiting Strategic from using the documents that it recently disclosed. But, during the hearing with Magistrate Judge Bernthal on May 15, 2015, Judge Bernthal asked about Strategic's intended use for the BuckleySandler documents. At that time, counsel for Strategic indicated that it had no intention of using those documents in its case in chief. And this might be so, as evidence that the fees were paid may be sufficient to establish the reasonableness of those fees in this type of litigation. *See, e.g., Taco Bell Corp v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004). This sanction would therefore serve no purpose.

However, dismissing the entire claim would be too severe. Strategic's conduct relates only to those fees associated with services provided in the underlying action by BuckleySandler. The sanction should reflect a sufficient nexus between the discovery violations and the matter that the disobedient party is prohibited from introducing into evidence. Dismissal of the lawsuit would go too far.

With all this in mind, the Court recommends that Strategic be barred from introducing all evidence of the BuckleySandler fees and costs at trial. Strategic should have produced the 80,000 pages at the beginning of this litigation, when it was specifically requested by St. Paul six

9

months ago, and again when the Court ordered it produced. Yet, Strategic chose to withhold this evidence until the last minute, thereby gaining a significant advantage over St. Paul who needed this evidence for its defense. When given an opportunity to partly relieve the harm caused by the untimely disclosure, Strategic chose to ignore another Court Order. Strategic's conduct hamstrung St. Paul's ability to challenge the BuckleySandler fees. Thus, the Court recommends precluding Strategic from presenting any evidence of the very BuckleySandler fees that it prevented St. Paul from contesting.

Strategic is admonished that further discovery abuses will result in a recommendation that this lawsuit be dismissed in its entirety.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 30th day of July, 2015.

                                                                           s/ERIC I. LONG
                                                         UNITED STATES MAGISTRATE JUDGE